## Case No. 3,577.

### DARLINGTON v. LA CLEDE COUNTY.

[4 Dill. 200.][1]

Circuit Court, W. D. Missouri. 1877.

MUNICIPAL RAILWAY AID BONDS—BONA FIDE PURCHASERS—PRELIMINARY CONDITIONS.

Bonds issued by the defendant county in 1870, under the act of January 11, 1860, to the La Clede and Fort Scott Railroad Company, are valid in the hands of an innocent holder, although not sanctioned by a popular vote, and although the said railroad company—the payee—was not at the time a corporation de jure.

The facts, as agreed upon, are these:

1. That this action is brought for the collection of interest coupons originally attached to bonds of the following tenor and terms: "United States of America, State of Missouri. No. ———. Twenty years. $1,000. Interest seven per cent, payable semi-annually, on the first days of January and July in each year. Know all men by these presents: That the county of La Clede, in the state of Missouri, acknowledges itself indebted and firmly bound to the La Clede and Fort Scott

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Railroad Company in the sum of one thousand dollars, which sum the said county, for value received, hereby promises to pay to said company or bearer, at the National Bank of the State of Missouri, twenty years after date, with interest thereon from the date hereof at the rate of seven per cent per annum, payable semi-annually, on the first days of January and July of each year, on the presentation and delivery at said bank of the interest coupons hereto attached. The county hereby reserving the right to redeem this bond at any time after the expiration of ten years. This bond is issued pursuant to the order of the county court of the county of La Clede, made on the 17th day of August, 1869, by authority granted in the charter of the La Clede and Fort Scott Railroad Company, by an act of the general assembly of the state of Missouri, entitled 'An act to incorporate the La Clede and Fort Scott Railroad Company,' approved January 11th, 1860. In testimony whereof, the said county of La Clede has executed this bond by the presiding justice of the county court of said county, under the order of said court, signing his name hereto, and by the clerk of said court, under the order thereof, attesting the same, and affixing hereto the seal of said court. This done at the office of said clerk of said court, this 1st day of July, A. D. 1870. (Seal.) John W. Smith, Presiding Justice County Court. Attest: J. T. Tallioferro, Clerk County Court." And the said coupons are each of the following terms and tenor: "($35.) Lebanon, La Clede County, Missouri. The county of La Clede, state of Missouri, will pay to the bearer, at the National Bank of the State of Missouri, at St. Louis, Missouri, on the 1st day of ———, 18—, thirty-five dollars, being the semi-annual interest due on bond No. —. John W. Smith, Presiding Justice County Court. Attest: J. T. Tallioferro, Clerk County Court."

2. That by an act of the general assembly of the state of Missouri, entitled "An act to incorporate the La Clede and Fort Scott Railroad Company," approved January 11th, 1860, it was, inter alia, enacted as follows: "Sec. 14. It shall be lawful for the county court of any county in the state to subscribe to the stock of said company (the La Clede and Fort Scott Railroad Company), or invest its three per cent fund, or any other internal improvement fund belonging to the county, as stock in said road, and for the stock subscribed in behalf of the county, may issue the bonds of the county to raise the funds to pay the same, and, to take proper steps to protect the interests of the county, may appoint an agent to represent the county, vote for it, and receive its dividends."

3. That on the 1st day of June, 1860, six of the corporators named in said charter met, pursuant to a call for that purpose, at Stockton, Missouri, to organize the La Clede and Fort Scott Railroad Company, and a

board of directors, and at said meeting said persons selected themselves, and added one Dodson, who was not present at said meeting, as directors, and said directors elected a president, secretary, and treasurer, which was the only meeting this board ever held, and no by-laws were adopted or subscription books opened, nor subscriptions made to the stock of said company, and the records or minutes of said meeting are not known to exist at present. That from the first Monday of June, 1860, to the first Monday of June, 1869, no meeting was held to organize a board of directors, and no subscription books were opened during that period of time, nor was any survey made of said proposed railroad, nor any work done thereon of any kind. That on the said first Monday of June, 1869, another meeting was held by persons, two of whom were named as corporators in said charter, at Bolivar, Missouri, to organize the La Clede and Fort Scott Railroad Company, and certain persons were named at said meeting as directors, who proceeded to designate officers, adopt by-laws, and take subscriptions to capital stock, and to perform acts for and in the name of the La Clede and Fort Scott Railroad Company.

4. That the association claiming to be organized as the La Clede and Fort Scott Railroad Company commenced the construction of its railroad in the county of Vernon, Missouri, between Nevada and Fort Scott, in the year 1869, but did not commence the construction of its railroad in the counties of La Clede or Dallas until the spring of 1870.

5. That the constitution of the state of Missouri, which went into effect on the 4th day of July, 1865, by section 14, art. 11, provided: "The general assembly shall not authorize any city, county, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall assent thereto."

6. That the county court of La Clede county made and adopted the following orders, and caused the same to be entered of record, viz.: "On the 17th day of August, 1869. It is ordered by the court, that one hundred thousand dollars be, and the same is hereby, subscribed to the capital stock of the La Clede and Fort Scott Railroad Company, for and on behalf of the county of La Clede, upon the following expressed conditions, and none other." (Here follow the conditions.) "On the 14th day of June, 1870. Ordered by the court, that the president and the clerk of this court be, and they are hereby, authorized and directed to sign and countersign, under the seal of the court, the bonds prepared and directed to be issued under the order of this court, dated August 17, 1869, to pay the subscription of one hundred thousand dollars to the capital stock of the La Clede and Fort Scott Railroad Company, and, when signed and countersigned as aforesaid, shall notify the president of said company that the same are ready to be delivered, in accordance with said order. It is further ordered that Charles W. Rubey be, and he is hereby, appointed county railroad agent, under the provisions of the order of this court made as aforesaid, August 17, 1869; and upon his giving bond in the penalty of two hundred thousand dollars, to be approved by the court, or the clerk thereof in vacation, the clerk shall deliver to him the bonds aforesaid, to be disposed of by him as provided in said order. Further ordered, that the clerk of this court keep a correct record of the issue and delivery of the said bonds—John W. Smith and John Esther concurring, and James Partlow dissenting."

7. That the taking of stock in the La Clede and Fort Scott Railroad Company, or the issue of bonds thereto by the county of La Clede, was never submitted to the voters of La Clede county, and that many of the people of La Clede county, at and before the taking of said stock and the issue of said bonds, remonstrated with the county court of La Clede county against taking any stock in said company or issuing bonds therefor.

8. That in the year 1870 one hundred bonds, of the form and tenor hereinbefore set forth, were signed by the said John W. Smith, styling himself and then acting as the presiding justice of the county court of La Clede county, and attested by one J. T. Tallioferro, who was then the clerk of said court, and sealed with the corporate seal of said county affixed by said clerk, of which the bonds mentioned and described in plaintiff's petition were a part.

9. That subsequently, in the year 1870, said bonds were sold by the officers of said county in the city of St. Louis, for cash, at prices ranging from fifty-five to sixty-five cents on the dollar of their par value, which prices were then and there the fair market value of said bonds, and the proceeds thereof were disbursed by said county's railroad agent in paying for the construction of the railroad bed or grading of said railroad company within the boundaries of said county; all of which was done pursuant to and in accordance with the terms and conditions of said orders of subscription.

10. That said county received from said railroad company, in consideration of said bonds, or the proceeds thereof, certificates for one thousand shares of full-paid capital stock, having a par value of one hundred dollars per share, amounting in the aggregate to one hundred thousand dollars, and said county now still holds and owns said stock and certificates, but the said stock has a market cash value of only ten cents on the dollar, and its highest market cash value in St. Louis, for any prior year, did not exceed thirty-five cents on the dollar.

11. That said county subsequently claimed and exercised its rights as the holder and owner of said one thousand shares of stock, at the meetings and elections of the stockholders of said railroad company in the years 1870, 1871, 1872, and 1873, by its county railroad agent appointed for such purpose.

12. That the county court of said county levied, and caused to be collected, special taxes, in the years 1871 and 1872, for the payment of the interest upon the said bonds, and applied the funds so raised by taxation to the payment of the first three installments of semi-annual interest on said bonds, represented by coupons that were detached therefrom and surrendered to said county, and to these taxes, and to the payment thereof, many citizens and tax-payers of La Clede county objected, on the ground that the whole of the proceedings for the issue of bonds to said railroad, and the levy of taxes for the interest thereon, was illegal, unconstitutional, and void. And from the spring of the year 1873, the county of La Clede, by its constituted authorities and its county court, has refused the payment of taxes on account of said bonds, for the same reasons last above stated.

13. That the plaintiff herein is the purchaser and holder of the bonds and coupons mentioned in his petition, before maturity, in the usual course of business, at the market rate at which they were selling at the time, and he did not know anything against the validity of the bonds at the time he bought them, but if there was any constitutional, legislative, or other legal objection that may appear in law or equity against the validity of the bonds, the defendant is entitled thereto in its defence.

Joseph Shippen, for plaintiff.
Britton A. Hill, for defendant.

Before DILLON, Circuit Judge, and KREKLE, District Judge.

DILLON, Circuit Judge. By the agreed statement of facts herein, it appears that this is an action by a bona fide holder of bonds issued by the defendant to the La Clede and Fort Scott Railroad Company or bearer.

The bonds recite as follows: "This bond is issued pursuant to the order of the county court of the county of La Clede, made on the 17th day of August, 1869, by authority granted in the charter of the La Clede and Fort Scott Railroad Company by an act of the general assembly of the state of Missouri, entitled 'An act to incorporate the La Clede and Fort Scott Railroad Company,' approved January 11, 1860." This act has the following provision: "Sec. 14. It shall be lawful for the county court of any county in the state to subscribe to the stock of said company, or invest its three per cent fund, or any other internal improvement fund belonging to the county, as stock in said road, and for the stock subscribed in behalf of the county may issue the bonds of the county to raise the funds to pay for the same, and, to take proper steps to protect the interests of the county, may appoint an agent to represent the county, vote for it, and receive its dividends." The twenty-second section exempts this charter from the general statutes of the state with certain specified exceptions.

In this case no popular vote was taken. The defendant's first position is that the true construction of this charter, in connection with the then existing general law, required a vote of the people of the county to authorize the subscription to the stock and the issue of bonds. If the charter stands alone, there was no need of any vote; but if the general law is to be construed with the charter, then there is room for the defendant's argument. Under the well established doctrine of the United States supreme court it might be conceded, for the purpose of this case, that a vote was necessary, and yet the defendant would be estopped by the recitals of the bonds. The holder for value is authorized to suppose that a vote, if required, was had. Such is the ruling in the cases of Humboldt Tp. v. Long and Marcy v. Oswego Tp. and Coloma v. Eaves, reported in [92 U. S.] 484, 637, 642.

In all the cases in the supreme court of the United States, that tribunal has held that the municipal or local officers were constituted the judges to decide whether antecedent or preliminary steps or conditions have been complied with, and that their decision, stated or implied in the recital, was conclusive against the corporate maker when the bonds have found their way into the hands of innocent holders. The supreme court so decided long ago, in the case of Knox Co. v. Aspinwall [21 How. (62 U. S.) 539], and the principle has been affirmed time and again.

The defendant's second objection is that the railroad company was not a corporation de jure. The county issued its bonds payable to said railroad company, which was an admission that it was a corporation. Under the agreed statement of facts there can be no question but that it was a corporation de facto. The company issued to the county its stock, and did work upon the projected railroad. On the other hand, the county issued its bonds to the company. Against these securities, in the hands of a bona fide holder, the county defends on the ground that the railroad company was not duly and legally organized. The defendant is estopped to make this defence. This point has been decided the same way by the supreme court of Missouri.

Upon the agreed statement of facts, we hold that the plaintiff is entitled to judgment upon his coupons. Judgment for plaintiff.